IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *     Crim. No. CCB-16-235 |
| | * |
| JAMAL CARTER | * |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM

Jamal Carter is a twenty-seven-year-old federal prisoner, currently incarcerated at Cumberland FCI, serving a 132-month sentence for drug trafficking. Now pending is Carter's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECFs 660, 665). Carter seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. The government opposes the motion. (ECF 669). For the reasons explained below, the motion will be denied.

## BACKGROUND

Between at least July 2015 and April 2016, Carter and a co-conspirator managed a drug trafficking operation in and around an apartment complex known as "Pedestal Gardens" in Baltimore, Maryland. (ECF 360, Plea Agreement at 8). The organization maintained a stash house in Catonsville that was used to store drugs and drug proceeds and to process and package drugs for distribution. (*Id.*). Working with a confidential source, law enforcement observed Carter selling heroin several times to the source in amounts between 71 and 120 grams. (*Id.* at 8–9). Law enforcement also obtained authorization to intercept communications over Carter's cell phone. In intercepted communications, Carter contacted co-conspirators to discuss the status of the organization's operations including the status of drug sales, supply, and distribution and whether Pedestal Gardens was staffed with someone to sell drugs. (*Id.*). On April 28, 2016, law enforcement executed a search warrant at the location of the organization's stash house. Carter was present at the location. Officers recovered approximately

1

1,186 grams of fentanyl, 575 grams of heroin, and nine grams of cocaine, all packaged in clear plastic bags; two kilograms of Phenacetin, a substance commonly used to cut drugs; supplies used to cut and package drugs for distribution, including sifters, a digital scale, gel capsules, and plastic bags; and $15,465 in U.S. currency. (*Id.* at 9–10).

On December 13, 2017, Carter pled guilty to one count of conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846. (*Id.* at 1; ECF 358). In addition to the facts discussed above, Carter agreed as part of his plea that it was reasonably foreseeable to him that the organization distributed at least one but less than three kilograms of heroin. (ECF 360, Plea Agreement at 10). He further agreed pursuant to Fed. R. Crim. P. 11(c)(1)(C) that a sentence between 132 and 156 months was an appropriate disposition of the case. (*Id.* at 4). The court imposed a sentence of 132 months, at the low end of the C-plea range, to reflect Carter's relative culpability with his codefendants and his recent diagnosis with Hodgkin's Lymphoma. (ECF 432, Statement of Reasons at 3; ECF 431, Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set

forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Carter submitted a request for compassionate release to his warden January 11, 2021 which was denied on February 26, 2021. (ECF 660). The government does not contest that Carter has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Carter's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Carter argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (Hodgkin Lymphoma, hypertension, and obesity) constitutes an "extraordinary and compelling reason" to reduce his sentence. (ECF 665-1, Medical Records at 9;

3

ECF 665-2, Medical Records at 30). According to the Centers for Disease Control ("CDC"), Hodgkin Lymphoma (a type of cancer), hypertension, and obesity "can make you more likely to get severely ill" (meaning hospitalization, intensive care, the need for a ventilator, or death) from COVID-19. *COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021).[1] The CDC has also warned that "[t]he risk of severe COVID-19 increases as the number of underlying medical conditions increases in an individual[,]" *COVID-19: Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated May 13, 2021), and the mere fact of Carter's incarceration also compounds his risk. *See Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *COVID-19: For People Living in Prisons and Jails*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (updated Mar. 5, 2021) ("Living in prisons and jails puts you at higher risk for getting COVID-19 because: it may be hard to stay at least 6 feet away . . . from other people; there may not be enough space to keep people with COVID-19 away from others; you may be sharing space with someone who has the virus and does not know it . . . ; staff or visitors may have the virus and not know it.").

The government argues that Carter's medical conditions are not an extraordinary and compelling reason for his release because Carter has received a COVID-19 vaccine.

---

[1] The government argues that the record does not substantiate a diagnosis of obesity. The court disagrees. Carter's most recent weight in his medical records is 218 pounds, and his height is listed as 5' 3" in his presentence report. (ECF 395, Presentence Report ¶ 51; ECF 665-2 at 6). With this height and weight, Carter's BMI is 38.6, well above a BMI of 30 which would indicate obesity according to the CDC. *COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021).

Carter's vaccination status does not greatly decrease the court's concern that his medical conditions increase his risk of severe illness due to COVID-19. While clinical trials for vaccines with emergency use authorization have shown that the vaccines "are effective at helping protect against severe disease and death from . . . the virus that causes COVID-19," *see COVID-19: Key Things to Know About COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (updated Aug. 19, 2021), its effectiveness is not guaranteed. Additionally, there is much more for experts to learn about "how effective the vaccines are against new variants of the virus that causes COVID-19" and "how long COVID-19 vaccines protect people." *Id.* While the CDC currently believes "breakthrough" infections of COVID-19 in vaccinated people are "rare" the agency has also described such infections as "inevitable." *See COVID-19: Science Brief: COVID-19 Vaccines and Vaccination*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (updated Jul. 27, 2021). As of this writing there are at least two known instances of large COVID-19 outbreaks where the majority of cases are among vaccinated persons. *See Morbidity and Mortality Weekly Report: Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021*, CDC, https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm (Jul. 30, 2021) (identifying 469 cases of the Delta variant among Massachusetts residents who had traveled through a Barnstable County town, 74 percent of which occurred in fully vaccinated persons, following large public events in the town); *More than 200 staff members at 2 San Francisco hospitals have tested positive, most in breakthrough Delta infections*, New York Times, https://www.nytimes.com/2021/07/31/us/covid-san-francisco-hospital-delta.html (Jul. 31, 2021) (reporting that "[a]t least 233 staff members at two major San Francisco hospitals, most of them fully vaccinated, tested positive for the coronavirus this month"). And just weeks ago, in a rapid reversal of earlier guidance that vaccinated persons did not need to

wear a face mask indoors, the possibility of breakthrough infections caused the CDC to recommend that fully vaccinated people who are at an increased risk of severe illness should wear a mask in congregate indoor settings, regardless of the level of community transmission in their area. *See COVID:19: Interim Public Health Recommendations for Fully Vaccinated People*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (updated Aug. 19, 2021).

The court will take Carter's vaccination status into account when balancing his risk of illness with the § 3553(a) factors, but at this point, over a year and a half into an unprecedented global pandemic about which there are still a number of remaining unknowns, the fact that Carter has received a vaccine does not negate that his underlying health conditions make him eligible for compassionate release. *See United States v. Palmer*, No. 8:13-CR-00623-PWG-2, 2021 WL 3212586, at *3 (D. Md. July 29, 2021);[2] *United States v. Spriggs*, No. CR CCB-10-364, 2021 WL 1856667, at *3 (D. Md. May 10, 2021).[3]

Carter's risk of severe illness from COVID-19 does not, however, end the court's inquiry. The compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary

---

[2] Unpublished opinions are cited for the soundness of their reasoning and not for any precedential value.

[3] The government also argues that Carter is not eligible for compassionate release unless the court finds him not a danger to the community under 18 U.S.C. § 3412(g), citing U.S.S.G. § 1B1.13, which advises that in order to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A), the court must determine (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the reduction is consistent with the U.S.S.C.'s policy statements. But as stated *supra*, U.S.S.G. § 1B1.13 applies only to motions for sentence reduction brought on behalf of defendants by the BOP and thus is not applicable to Carter's motion. *See McCoy*, 981 F.3d at 281–82; *United States v. Kibble,* 992 F.3d 326, 330–31 (4th Cir. 2021). At any rate, in addressing the § 3553(a) factors, the court considers the need for the sentence to "protect the public from further crimes of the defendant," see 18 U.S.C. § 3553(a)(2)(C), an inquiry which implicitly requires the court to assess Carter's danger to the community.

and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Here, those factors weigh against relief.

The government opposes Carter's release under the § 3553(a) factors on the grounds that the seriousness of Carter's offense and his criminal history demonstrate that he must serve out the remainder of his sentence in order to protect the public, provide for adequate deterrence, account for the seriousness of the offense, promote respect for the law, and provide just punishment. *See* §§ 3553(a)(2)(A)–(C). As explained above, Carter's conduct was very serious. He maintained a leadership role in a drug trafficking organization that would distribute between one and three kilograms of heroin, a very large amount of the controlled substance. And this is not Carter's first felony offense. In 2013, he was convicted of illegally carrying a handgun and first-degree assault. (ECF 395, PSR ¶¶ 37–38). Those convictions were related to an incident in which Carter attempted to rob an individual and shot the victim in the process of the robbery. (*Id.*). Carter was on probation for these offenses when he was arrested for the drug conspiracy. (*Id.*).

The court considers this history alongside Carter's post-sentencing conduct, which "provides the most up-to-date-picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). Carter's counsel indicates Carter has completed his GED and has enrolled in several courses. (ECF 665 at 5–6). Carter has incurred one disciplinary infraction for possessing an unauthorized item, a book of stamps. (ECF 665 at 6; ECF 665-5). While this may not be a significant disciplinary history within the BOP, the court finds that release at this time would not adequately protect the public from further crimes by Carter, given the recency and seriousness of his felony offenses, and the fact that he historically has not done well on probation. Moreover, the court must ensure that a sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 3553(a)(2)(A)–(B). Carter has served only 46 months, less than half of his eleven-year sentence, and less than half of the ten-year mandatory

minimum sentence for convictions involving the trafficking of this quantity of drugs. *See* 21 U.S.C. § 841(b)(1)(A)(i). Accordingly, the court finds that the balance of the § 3553(a) factors weighs against granting compassionate release. In making this finding, the court is certainly mindful of Carter's lymphoma diagnosis and hopes for his recovery; his current health status does not, however, persuade the court that it is appropriate to release him at this time given the balance of the § 3553(a) factors and the fact that the evidence currently available regarding the COVID-19 vaccine suggests it is likely, although not guaranteed, to protect him from severe illness should he contract the virus.

## CONCLUSION

For the foregoing reasons, Carter's motion for compassionate release (ECFs 660, 665) will be denied. The associated motion to seal (ECF 668) will be granted to protect the confidentiality of personal information. A separate Order follows.

   8/20/2021  
Date

/S/  
Catherine C. Blake  
United States District Judge